**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 07-05384-JW |
| | Chapter 11 |
| Henry M. Proveaux, | ORDER |
| Debtor(s). | |

FILED at ___ O'clock & ___ min ___ M
MAR 31 2008
United States Bankruptcy Court
Columbia, South Carolina (25)
ENTERED
MAR 3 1 2008
L.O.

This matter comes before the Court on Motion for Summary Judgment ("Motion") filed by Henry M. Proveaux ("Debtor"). This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

1. On August 28, 2007, prior to the petition date in this case, the Proveaux Family Limited Trust ("Trust") entered into a Contract with Land Development Resources, Inc. ("LDR") to sell to LDR certain pieces of real property owned by the Trust known as Tracts 14, 15, and 15 of the Deer Park Properties ("Properties").

2. The Contract with LDR provides in part that:

    a. "Seller warrants that he presently has title to said Property and that at the time the sale is consummated agrees to convey good and marketable title to said Property … subject only to … (4) leases, …. In the event leases are specified in the Agreement, Purchaser agrees to assume Seller's responsibility thereunder…";

    b. the Properties would be sold with all fixtures and improvements;

---

[1] To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

c. "such Property or Properties are sold 'As is,' 'Where is' with no warranty expressed or implied about condition, use or potential economic benefit...";

d. "such Property or Properties are acceptable in its or their present condition, and that Purchaser has had ample opportunity to visit the Property or Properties prior to executing this Agreement";

e. "various oral and written information has been made available to Purchaser concerning such Property or Properties, but Seller and Auctioneer make no representation, warranty or other assertions, expressed or implied, with respect to the accuracy, completeness or content of such information...";

f. "Purchase understands that the ... Agreement ... is the only agreement oral or written, between Seller and Purchaser concerning such Property or Properties...";

g. "Seller ... will not have any liability whatsoever for any alleged oral or written representations ... relating to such Property or Properties other than as expressly set forth in the Agreement...";

h. "Purchaser has not relied upon any representations of Seller and Auctioneer, their agents or legal counsel, regarding the Agreement...";

i. "This Agreement constitutes the sole and entire agreement between the parties..."; and

j. "No representation, promise, or inducement not included in this agreement shall be binding upon any party hereto..." ;

3. The Contract does not specify whether there are any leases affecting the Properties.

4.  Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on October 2, 2007.

5.  Immediately prior to the petition, Debtor transferred the Properties from the Trust to himself. There is no evidence in the record that Debtor transferred the rights under the Contract from the Trust to himself.

6.  Debtor's schedules, filed October 16, 2007, disclose the Contract with LDR and indicate that Debtor will reject this Contract. Debtor's original schedules fail to state that there are leases affecting the Properties.

7.  Rather than move to assume or reject the Contract, on November 2, 2007, Debtor filed a Notice and Application to sell the Properties to LDR and James Sloggatt and Karen Sloggatt (collectively the "Sloggatts").[2] The Notice and Application provide that the Properties will be sold "free and clear of all liens, judgments and encumbrances pursuant to 11 U.S.C. § 363(f)." The Contract is attached to the Notice and Application but is only referenced in the purchase price portion of the Notice and Application.[3]

8.  On December 6, 2007, without objection by parties in interest, the Court entered an order approving the sale of the Properties to LDR ("Order"). The Order found that LDR was a good faith purchaser for value and provided "Debtor is authorized to sell and to convey the estate's interest in the above-described property on the terms recited herein...." The Order does not reference the Contract, personal property on the Properties, or any leases affecting the Properties.

---

[2]   Herein the Court will refer to LDR and the Sloggatts as "LDR," although it does not appear to the Court from the Contract provided by the parties to the Court that the Sloggatts were originally the purchasers under the Contract.

[3]   The Notice and Application state, "PRICE: $209,000.00. A copy of the contract is attached."

3

9. Debtor filed a disclosure statement and chapter 11 plan on December 21, 2007. The disclosure statement states that "Debtor does not have any Executory Contracts." The chapter 11 plan does not seek to assume any contract with his son and it does not appear that Debtor assumed any leases affecting the Properties prior to the entry of the Order.

10. LDR and Debtor did not close on the sale of Properties on the scheduled closing date of January 4, 2008. LDR contends, that immediately prior to the sale, Debtor produced a written lease between him and his son through which the son leases the Properties for $1,000.00 per month in "sweat equity." The lease is dated May 1, 2007 but has not been recorded pursuant to S.C. Code Ann. § 27-33-30. LDR refused to close the sale unless this lease was removed and unless Debtor removed certain personal property on the Properties.

11. On January 16, 2008, Debtor filed an amended Schedule G disclosing the lease with his son. Debtor's amended Schedule G and amended disclosure statement, filed January 17, 2008, indicate that Debtor intended to assume the lease with his son.[4]

12. On January 18, 2008, LDR filed a motion to compel Debtor to comply with the Order. LDR seeks specific performance of the Order through the purchase of the Properties without the lease between Debtor and his son and the personal property located on the Properties. LDR contends that certain oral representations were made to it by Debtor or his agents that the Properties were not subject to any written leases.

13. Debtor has moved for summary judgment on grounds that the Contract provides that LDR would take subject to leases and prohibits action by LDR on any oral representations not contained within the Contract. Debtor seeks a determination that he is no longer obligated under the Order to sell the Properties to LDR since LDR failed to close on January 4, 2008.

---

[4] Debtor failed to amend his chapter 11 plan to indicate that he intended to assume this lease.

4

## **CONCLUSIONS OF LAW**

I.  **Standard for Granting Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 and Rule 9014 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is a favored mechanism "to secure the 'just, speedy and inexpensive determination' of a case." Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1322-23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1).

"Where a movant [supports] its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant must proffer countering evidence sufficient to create a genuine factual dispute." In re Dig It, Inc., 129 B.R. 65, 66 (Bankr. D.S.C. 1991). "To counter a motion for summary judgment, the non-movant may not rest on its pleadings or mere assertions of counsel." Id. at 66-67. The "obligation of the non-moving party is 'particularly strong when the nonmoving party bears the burden of proof.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1999)). The mere existence of disputed facts does not require that a case go to trial. Thompson, 57 F.3d at 1323. "The disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." Id. Any inferences drawn in favor of the nonmoving party must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Id.

## II. Genuine Issues of Material Fact Exists

### A. The Contract's Provisions May Not Have Been Incorporated Into the Order

Debtor relies on the anti-reliance provision and other terms of the Contract to preclude the present action by LDR to obtain specific performance by Debtor to sell the Properties without the lease to Debtor's son and the personal property. In other cases, the Court has found that summary judgment is appropriate to preclude pre-petition tort claims by a party where there is a specific anti-reliance provision in a pre-petition contract. See Hovis v. General Dynamics Corporation (In re Marine Energy Systems Corporation), 362 B.R. 247, 272-273 (Bankr. D.S.C. 2006). This case is distinguishable from Hovis in that Debtor and LDR did not close prior to the petition under the Contract at issue but rather LDR agreed to purchase the Properties pursuant to the terms of the Order. The bankruptcy, in essence, created a new agreement whereby Debtor would sell his assets pursuant to the terms of this Court's Order and not a pre-petition agreement. See Jarecki v. Com. of Pa. Unemployment Compensation Fund (In re Jarecki), 202 B.R. 385, 388 (W.D. Pa. 1995) (holding that parties are bound by the terms of the order approving a sale); In re Silver Brothers Co., Inc., 179 B.R. 986, 1006-1007 (Bankr. D.N.H. 1995).

The Order, drafted by Debtor's counsel, makes no mention of the Contract, the anti-reliance provision in the Contract, or the lease with Debtor's son. Morrison v. Brosseau, 377 B.R. 815, 824 (E.D. Tex. 2007) (finding a bankruptcy court order approving sale did not incorporate the terms of a settlement agreement between non-debtors). Furthermore, the Contract was between LDR and the Trust. There is insufficient evidence that the Contract was assigned to Debtor or that Debtor assumed its terms in this bankruptcy. Although the Contract is referenced in the associated Notice and Application, the reference is only made to the purchase price LDR agreed to pay to acquire the Properties and thus its terms may not have been fully

6

incorporated into LDR's post-petition agreement to purchase the Properties. See id. Finally, there is insufficient evidence in the record that the Sloggatts are parties to or are bound by the Contract. The copy of the Contract provided to the Court was only executed by Sean Pendergrass, as president of Land Development Resources, Inc. and therefore its terms, if enforceable, may not be binding on the Sloggatts. Construing the foregoing in a light most favorable to LDR, there are genuine issues of material fact as to whether certain terms of the Contract are part of LDR's post-petition agreement to purchase the Properties pursuant to the terms of the Order.

### B.    Issues of Fact Exist as to What LDR Purchased

Debtor's bankruptcy created new rights for Debtor and limitations on his ability to dispose of his property. For instance, 11 U.S.C. § 363(f) allows Debtor to sell property free and clear of any interest in such property. This provision grants Debtor powers not available at state law to dispose of property and transfer rights, which are good against the world. See In re Ducane Gas Grills, Inc., 320 B.R. 324, 333-334 (Bankr. D.S.C. 2004). Because the term "interest" is broadly construed, Debtor's power under 11 U.S.C. § 363(f) includes the right to sell free and clear of an executory contract interest. See In re Taylor, 198 B.R. 142, 159-160 (Bankr. D.S.C. 1996). 11 U.S.C. § 363(b) also limits what Debtor may sell under 11 U.S.C. § 363(f) in that Debtor may only sell property of the estate. See In re Southwest Florida Heart Group, P.A., 342 B.R. 639, 644 (Bankr. M.D. Fla. 2006). Thus, if the lease with the son and the personal property on the Properties were not property of the estate, then, pursuant to 11 U.S.C. § 363(b), these property rights were not part of the bundle of rights sold to LDR in the Order.

Although the Contract provides that LDR would take subject to leases, the Order properly recognizes Debtor's limitations under 11 U.S.C. § 363(b) and provides that Debtor would sell

7

only "the estate's interest." See Morrison, 377 B.R. at 825 (finding a bankruptcy court could only approve the sale of assets of the estate). As discussed in Taylor, an unassumed lease may not be property of the estate. See Taylor, 198 B.R. at 159-160. In this case, it does not appear that Debtor has assumed the lease.[5] The parties have not addressed whether the lease or the personal property on the Properties were property of the estate when the Properties were sold under the Order or whether Debtor sold his interest in the Properties free of the interests of his son.[6] Since the four-corners of the Contract, relied upon by Debtor as a defense to specific performance, do not and cannot address this post-contractual, post-petition creation of property of the estate and Debtor's powers to sell free and clear of an executory contract, the Court does not believe it appropriate to grant Debtor summary judgment on the grounds set forth in his Motion.

### C. The Merger and Anti-Reliance Provisions May Not Bar Certain Evidence

To the extent that the Contract's provisions are enforceable, genuine issues of material fact remain as to whether LDR is entitled to specific performance. Although the anti-reliance and merger provisions may preclude evidence of pre-contractual oral representations made by Debtor that induced LDR to enter into the Contract, these provisions do not clearly bar evidence of any post-contractual representations made to induce LDR to agree to purchase the Properties pursuant to the terms of the Order. In this case, after the Contract was entered into but before the

---

[5] Although Debtor references his desire to assume the lease in his amended Schedule G and amended disclosure statement, his chapter 11 plan and its four amendments make no mention of the lease or Debtor's desire to assume the lease at confirmation.

[6] To the extent these interests were property of the estate, they were never mentioned as assets being sold through the Notice and Application. It would appear inconsistent with the general policies of the Bankruptcy Code of candor and full disclosure to allow a debtor to sell property under Court supervision without ever disclosing to the Court or his creditors in his schedules or application precisely what interests Debtor has and what is being sold. See In re Williams Brothers Asphalt Paving Co., Inc., 56 F.3d 66, 1995 WL 316799 (6th Cir. 1995) (finding a debtor cannot sell its right to a refund, as part of its sale of assets, without disclosing the existence of the refund in its bankruptcy). To do so would leave parties in interest without necessary information to judge whether the sale adversely affects their rights or is otherwise in the best interest of the estate.

filing of the Notice and Application, Debtor filed sworn bankruptcy schedules that do not disclose a lease at issue.[7] The Court cannot find that the Contract, as a matter of law, precludes LDR from relying on this representation in its action for specific performance of the Order.

### D.   Parol Evidence May Be Necessary to Interpret the Contract

Construing the facts in a light most favorable to LDR, it appears that the Contract, to the extent it is relevant and enforceable, may be ambiguous or capable of more than one construction. The Contract provides that LDR would take subject to leases but later states that LDR agrees to assume the seller's responsibility under such leases in the event leases were specified in the Contract. Debtor's lease with his son was not clearly specified in the Contract. The Contract also does not clearly specify whether Debtor was taking the Properties with all personal property located thereon but does provide that LDR would purchase with all fixtures and improvements on the Properties. Therefore, if the Contract is controlling, parol evidence may be necessary to determine the intent of the parties and a genuine issue of material facts exists since the parties have offered competing affidavits as to whether Debtor specified if the Properties were subject to leases.[8] See Harbour Town Yacht Club Boat Slip Owners' Ass'n v. Safe Berth Management, Inc., 421 F.Supp.2d 908, 910-911 (D.S.C. 2006) (holding if contract is ambiguous or capable of more than one construction, question of what parties intended becomes one of fact).

---

[7]   Debtor's original disclosure statement, filed December 21, 2007, also indicated that he did not have any executory contracts.

[8]   It appears that LDR is willing to take the Properties subject to oral leases but contends that Debtor's agents represented to it that there were no written leases and a title search revealed that no written lease was recorded. LDR also contends, in its affidavit of James P. Sloggatt, that the written lease with Debtor's son was created fraudulently to chill the sale of the Properties, which is an additional ground to deny summary judgment since LDR appears to be disputing the validity of the lease at issue.

## **CONCLUSION**

Based upon the foregoing, Debtor's Motion is denied. There are genuine issues of material fact as to the rights purchased by LDR and the terms of Debtor's agreement with LDR.. The trial in this matter shall be had before the undersigned on **April 29, 2008 at 10:30 a.m.** at the United States Bankruptcy Court, 145 King Street, Charleston, South Carolina. The parties shall submit a proposed pre-trial order by April 22, 2008 at 12:00 p.m.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
March 31, 2008